UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JONATHAN HEMINGWAY, ET AL.  CIVIL ACTION NO. 09-1031

VERSUS  JUDGE S. MAURICE HICKS, JR.

CHARLIE CALDWELL, ET AL.  MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by Defendants Charlie Caldwell, Shreveport City Marshal ("Marshal Caldwell"), and David Emberton, former Deputy City Marshal ("Deputy Emberton"). See Record Document 62. Defendants seek dismissal of all claims against them solely on the grounds of qualified immunity. See id. Plaintiffs Jonathan Hemingway and Christopher Hemingway oppose the motion. See Record Document 66. No reply was filed by Marshal Caldwell and Deputy Emberton. For the reasons which follow, the Motion for Summary Judgment is **DENIED**.

**I.  BACKGROUND.**

During the night of June 21, 2008, Plaintiffs were patrons at a Shreveport, Louisiana nightclub called Phoenix Underground. See Record Document 62 (Defendants' Statement of Undisputed Facts at ¶ 1). On that same night, Deputy Emberton, who was on sick leave from his job as a Deputy City Marshal for the City of Shreveport, was nonetheless working at Phoenix Underground as a security guard. See id. (Defendants' Statement of Undisputed Facts at ¶¶ 2, 4). This lawsuit arises from an incident that occurred at Phoenix Underground between Plaintiffs, Deputy Emberton, and other named defendants during the late night hours of June 21, 2008 and/or the early morning hours of June 22, 2008.

The parties do not dispute that Deputy Emberton was "clothed with the authority of the City Marshal, but retained for wages by [Phoenix Underground] pursuant to the policies,

pattern and practice of the City Marshal." Id. (Defendants' Statement of Undisputed Facts at ¶ 3).[1] On the night of the incident, Deputy Emberton was wearing street clothes, not his uniform. See id. (Defendants' Statement of Undisputed Facts at ¶ 7). Generally, when working an off-duty job, Deputy Emberton wore his badge on his belt on a belt clip or around his neck on a neck lanyard. See id. (Defendants' Statement of Undisputed Facts at ¶ 7, citing Exhibit 1(E) at 83. If he wore the badge on his belt on a belt clip, the badge was only visible if he opened his jacket "just a little bit." Id., Exhibit 1(E) at 83, line 13. During his deposition, Deputy Emberton, in recounting the incident at issue in this case, stated: "I know during that incident one time I actually took my badge off my belt . . ." Id., Exhibit 1(E) at 83, lines 23-25.

The facts of the incident at the center of this case remain unclear, as Defendants' summary judgment evidence is lacking in factual detail. In their Statement of Undisputed Facts, Defendants allege:

> During the early morning hours of June 22, an altercation ensued in which the Hemingways and others were involved. (Compl. ¶ 7 -13).
>
> Pursuant to their duties, Emberton and other club employees restrained Plaintiffs in the process of making an arrest. (*See id.*).

Record Document 62 (Defendants' Statement of Undisputed Facts at ¶¶ 8-9). These two bare-bones and conclusory statements are the only "undisputed facts" presented by Defendants that even attempt to describe the actual incident at issue.

---

[1] Defendants contend that former Deputy Emberton should not have been working off-duty on June 21, 2008, as he was on sick leave. See Record Document 62 (Defendants' Statement of Undisputed Facts at ¶ 6). This contention is based on Section 8.0.1 of the City Marshal's "Administrative Policies and Procedures Manual" issued on April 30, 2004 and revised on September 30, 2010. See id., Exhibit 1(C). Plaintiffs dispute this fact because they believe at the time of this incident there was no written policy regarding off-duty employment. See Record Document 66-1 at ¶ 1 (Fact No. 6).

In the Complaint, Plaintiffs allege that they were physically detained, falsely imprisoned, handcuffed, and arrested without probable cause or warrant by Deputy Emberton. See Record Document 1 at ¶ 7. They further allege that Deputy Emberton beat them without provocation or justification. See id at ¶ 8. More specifically, Plaintiffs contend that Deputy Emberton "deliberately abused [them] for no reason"; "used unreasonable, excessive and unnecessary force against them"; and "allowed [other defendants] to beat [them]." Id. at ¶ 32. The Complaint further states:

> One example of Emberton's deliberate abuses against Plaintiffs is that he beat, shoved, kicked, and abused [Jonathan] Hemingway after Hemingway's hands were handcuffed behind his back and Hemingway was defenseless.

Id. at ¶ 33.

In opposing the Motion for Summary Judgment, Plaintiffs dispute that the actions of the Defendants were performed "pursuant to their duties" to the extent that this fact suggests that there was any justification for their restraint or arrest. Record Document 66-1 at ¶ 1 (Fact No. 8). While they do not dispute that Deputy Emberton arrested them, Plaintiffs "certainly dispute the lawfulness of the arrest[s]" and that Deputy Emberton's actions were necessary for his protection or the protection of other bar patrons. See id. at ¶ 2. Plaintiffs further note that they both were acquitted of all charges for which they were arrested. See id.[2]

---

[2]Neither party specifically identifies the offenses for which Plaintiffs were arrested on June 21, 2008 or June 22, 2008. In connection with their opposition, Plaintiffs have submitted a certified transcript from Shreveport City Court, Caddo Parish, Louisiana, dated October 26, 2011. See Record Document 66, Exhibit D. The caption on the certification reads: "State of Louisiana versus Christopher E. Hemingway, Dockets: 8K050533; DA080147; 9K048692, and State of Louisiana versus Johnathan D. Hemingway, Dockets: DA080146; 8K050532." Id. The transcript seems to reference simple battery, entering and remaining after being forbidden, and simple assault as the criminal charges against Plaintiffs. See id. at 156. The Judge found Plaintiffs not guilty on all charges. See id.

Pursuant to 42 U.S.C. § 1983, Plaintiffs filed this lawsuit on June 19, 2009, seeking declaratory, injunctive and monetary relief for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution. See Record Document 1.[3] They also asserted claims under the Louisiana Constitution and Louisiana Civil Code Article 2315. See id. The named defendants are Marshal Caldwell;[4] Downtown Down Under Entertainment, LLC, d/b/a Phoenix Underground; Deputy Emberton; Shawn Harris, employee of Phoenix Underground and/or Tim Huck Management, LLC; Jason Willis, employee of Phoenix Underground and/or Tim Huck Management, LLC; Timothy Huck, employee and/or agent of Phoenix Underground and owner/manager of Tim Huck Management, LLC; and Tim Huck Management, LLC. See id. at ¶ 3. Marshal Caldwell and Deputy Emberton have now filed the instant Motion for Summary Judgment seeking dismissal of all claims against them on the grounds of qualified immunity. See Record Document 62.

## II.  LAW AND ANALYSIS.

### A.  Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv.

---

[3]On January 4, 2013, all claims of Plaintiff Tiffany Hemingway were dismissed without prejudice for failure to prosecute. See Record Document 58.

[4]Marshall Caldwell was sued only in his *official* capacity. See Record Document 1 at ¶ 3 (emphasis added). No claims were made against Marshal Caldwell in his individual capacity.

Corp., 628 F.3d 725, 728 (5th Cir.2010).[5]  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir.1995).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005). Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in

---

[5]The Court notes that Rule 56 now employs the phrase "genuine dispute," rather than "genuine issue." This 2010 amendment does not alter the Court's analysis, as there was not a substantive change to the summary judgment standard. See F.R.C.P. 56(a) and advisory committee's note (emphasis added).

the light most favorable to the plaintiff. See Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769 (2007). In sum, the motion for summary judgment "should be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553.

### B. Qualified Immunity.

Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir.2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. See Michalik v. Hermann, 422 F.3d 252, 257 (5th Cir. 2005). First, the plaintiff must allege a violation of a clearly established constitutional right. See id. at 257-258. "A right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 258. Second, the plaintiff must claim that the defendant's conduct was objectively reasonable under the law at the time of the incident. See id. The Court may conduct the two-pronged inquiry in any order. See Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009).

### C. Claims Against Deputy Emberton.

As stated previously, Plaintiffs Jonathan Hemingway and Christopher Hemingway allege false arrest and excessive force claims against Deputy Emberton. Deputy Emberton

argues that he is entitled to dismissal of these claim on the grounds of qualified immunity. His argument can be summarized as follows:

> [Qualified immunity] applies even if Emberton were deemed to have used "excessive" force, given that he used what force he reasonably determined was necessary, under the circumstances he was presented with, to effect a lawful arrest and protect himself and other bar patrons.
> As noted above, even if the allegations in Plaintiffs' Complaint could make out a constitutional violation (which Defendants deny), the Court must ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Because Emberton's actions were objectively reasonable in light of the facts and circumstances confronting him, he is entitled to summary judgment in his favor.

Record Document 62 at 16. Plaintiffs maintain that statements in Deputy Emberton's motion such as "he used what force he reasonably determined was necessary" and he "effect[ed] a lawful arrest" are conclusory and baseless in light of the scant, and disputed, factual record. Record Document 66 at 14. Plaintiffs further note that the analysis set forth in Deputy Emberton's motion is devoid of a single citation to any portion of the summary judgment record, thus failing to meet the initial burden to show the absence of a genuine dispute of material fact. See id. They contend that Deputy Emberton's motion is without merit, as there are "wildly different accounts of the facts and circumstances surrounding this incident." Id. at 15.

False Arrest Claims

In order to prove a claim of false arrest, a plaintiff must show that he was arrested without probable cause. See Brown v. Lyford, 243 F.3d 185, 189 (5th Cir.2001). Probable cause is defined as "the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979).

Plaintiffs have alleged a violation of a clearly established constitutional right, that is, they were arrested without probable cause or warrant. Yet, due to the scant factual record, it is unclear exactly when, and for what offense(s), Plaintiffs were arrested. Additionally, the summary judgment record is insufficient for this Court to fully understand the facts and circumstances within Deputy Emberton's knowledge at the time he would have made a probable cause determination. As a consequence of these factual issues, it likewise cannot be determined on the present state of the record whether Deputy Emberton's actions were objectively reasonable under the circumstances. These factual issues must be resolved and/or developed more fully before this Court can determine whether Deputy Emberton is entitled to qualified immunity. Therefore, the Motion for Summary Judgment must be **DENIED** as to the arrest claim against Deputy Emberton.

Excessive Force Claims

To state a violation of the Fourth Amendment prohibition on excessive force, a plaintiff must allege (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable. See Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004). The objective reasonableness of the force depends on the facts and circumstances of the particular case. See Ikerd v. Blair, 101 F.3d 430, 434-435 (5th Cir. 1996). The court should consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989). The reasonableness of the use of force must be judged from the perspective of a reasonable officer. See id.

Again, Plaintiffs have alleged that medical injuries occurred during the altercation with Deputy Emberton. See Record Document 1 at ¶¶ 18-21, 39-41. Defendants do not appear to dispute this issue. However, the issues of excessiveness and reasonableness are factually disputed. Plaintiffs contend they were beaten without provocation or justification. Plaintiff Jonathan Hemingway maintains he was beaten while his hands were handcuffed behind his back and after he was defenseless.

Moreover, the summary judgment record is severely lacking with respect to key facts, such as the severity of the crimes at issue and the immediate threat, if any, Plaintiffs posed to Deputy Emberton and others at the bar. Other than Plaintiffs' contention that the force used was without provocation or justification, there is no factual evidence in the summary judgment record relating to resistance, namely in what manner, if any, Plaintiffs were actively resisting Deputy Emberton. The determination of objective reasonableness turns on the specific facts surrounding the June 21-22, 2008 incident, including the behavior of both Deputy Emberton and Plaintiffs. Thus, due to the present state of the record, this Court is simply unable to ascertain at this juncture whether Deputy Emberton is entitled to qualified immunity as to the excessive force claims. The Motion for Summary Judgment must, therefore, be **DENIED** as to the excessive force claims against Deputy Emberton.

### D. Claims Against Marshal Caldwell.

As stated *supra*, Marshal Caldwell was sued in his official capacity. See Record Document 1 at ¶ 3. Plaintiffs asserted no individual capacity claims against Marshal Caldwell. The defense of qualified immunity applies only to suits against defendants in their individual capacities. See Kentucky v. Graham, 473 U.S. 159, 166-167, 105 S.Ct.

3099, 3105-3106(1985) (holding that officials in their individual capacities "may . . . be able to assert personal immunity defenses," including qualified immunity, that are not available in official-capacity suits); Sanders–Burns v. City of Plano, 594 F.3d 366, 371 (5th Cir.2010) (stating that qualified immunity is "a defense that is only relevant to individual capacity claims"). The instant motion moves for dismissal of all claims against Marshal Caldwell solely on the grounds of qualified immunity. Yet, this defense is unavailable to Marshal Caldwell in his official capacity. Therefore, the Motion for Summary Judgment must be **DENIED** as to the claims against Marshal Caldwell.[6]

---

[6]Notwithstanding, summary judgment would likely have been denied on the merits as to the Section 1983 Monell municipal liability claims against Marshal Caldwell. In their Statement of Disputed Material Facts, Plaintiffs point to competent summary judgment evidence relating to the claims against Marshal Caldwell:

1. The former City Marshal had a policy of forbidding the chief deputy from "writing up" deputies for disciplinary infractions. (Ex. A, Deposition of Charlie Caldwell, pp. 12).

2. The City Marshal never attempted to "write up" deputy Emberton. (Ex. A, Deposition of Charlie Caldwell, pp. 12, 32-33).

3. Despite the Marshal's knowledge of several "nightclub-related" complaints of excessive force by Emberton, there are no documents in Emberton's personnel file showing that the Marshal ever investigated those incidents. (Exhibit C to Defendant's MSJ; Ex. A, Deposition of Charlie Caldwell, p. 27).

4. Emberton was not disciplined for a previous incident where Emberton admitted having punched a man in the mouth while holding handcuffs in his fist, breaking the man's teeth and lacerating his mouth. (Ex. B, Deposition of David Emberton, p. 16; Exhibit C, Deposition of David Emberton in Bailey, pp. 118-119; Ex. A, Deposition of Charlie Caldwell, p. 12).

5. The City Marshal did not document any disciplinary action of any kind against Emberton in his personnel file. (Exhibit C to Defendant's MSJ).

E.   **State Law Claims.**

Defendants contend that they "are also entitled to qualified immunity under parallel state law." Record Document 62 at 16. More specifically, they argue:

> The immunity afforded under the Louisiana statute [La. R.S. 9:2798.1] parallels that available under federal law. *Roberts*, 397 F.3d at 296.
> The allegations in Plaintiffs' Complaint indicate that the acts for which they seek to hold the City Marshal accountable involved the exercise of his policymaking and/or discretionary acts. . . . The making of a lawful arrest by Defendant Emberton, against whom the state-law claims are raised, is also a discretionary act within the course and scope of his lawful powers and duties, so he, too is entitled to state-law qualified immunity, for all of the same reasons asserted above with regard to immunity under federal law.

Id. at 16-17.

In Roberts v. City of Shreveport, the Fifth Circuit noted that "Louisiana applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983." Roberts, 397 F.3d 287, 296 (5th Cir. 2005). The Roberts court further held that "inasmuch as the plaintiffs' claims under state constitutional law parallel entirely the § 1983 allegations, [the defendant] enjoys the privilege of qualified immunity." Id.

Defendants seek immunity as to the state law claims "for all of the same reasons asserted . . . with regard to immunity under federal law." Record Document 62 at 17. Yet,

---

6.   Prior to the incident complained of herein, the City Marshal had settled at least three lawsuits alleging excessive force against Emberton in which both the City Marshal and David Emberton were named as Defendants. (Defendant's MSJ, Exhibit G).

Record Document 66-1. Defendants did not address these specific facts, as they did not file a reply. Thus, it appears these facts would have created a genuine dispute of material fact, precluding the entry of judgment as a matter of law in favor of Marshal Caldwell as to the municipal liability claims.

this Court held that it was unable to make a qualified immunity determination as to Deputy Emberton, as the insufficient factual record did not provide enough details to reach a conclusion regarding reasonableness. Moreover, this Court held that the defense of qualified immunity was unavailable to Marshal Caldwell, as there were no individual capacity claims asserted against him. Thus, summary judgment is likewise **DENIED** as to the state law claims.

### III. CONCLUSION.

Based on the foregoing analysis, the Motion for Summary Judgment filed by Marshal Caldwell and Deputy Emberton is **DENIED**. Genuine disputes of material fact exist that prevent this Court from determining whether Deputy Emberton is entitled to qualified immunity. Because Marshal Caldwell was sued only in his official capacity, the defense of qualified immunity is unavailable to him. Finally, the state law claims remain, as this Court was unable to make a federal qualified immunity determination and Defendants sought immunity as to the state law claims for all of the reasons asserted with regard to immunity under federal law.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of August, 2013.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE